UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION
Case No. 07-22670 CIV-Seitz/McAliley

STOCKWIRE RESEARCH GROUP, INC., a
Florida corporation and ADRIAN JAMES, a Texas
resident,

       Plaintiffs,

v.

JONATHAN LEBED, a Florida resident, LEBED
BIZ, L.L.C., a New Jersey Limited Liability
Company, PIGASA, INC., a New Jersey
Corporation and CONSTANCE LEBED, a New
Jersey resident,

       Defendants.

_____/

## DEFENDANT CONSTANCE LEBED'S MOTION TO QUASH SUBPOENAS DUCES TECUM ON NON-PARTIES AND TO IMPOSE SANCTIONS ON PLAINTIFFS AND SUPPORTING MEMORANDUM OF LAW

Defendant Constance Lebed ("Constance" or "Mrs. Lebed") moves to quash the several subpoena duces tecum issued by Plaintiffs for extensive records dating back five years concerning her and served on America Online, Inc., American Express, Discover Financial Services, Constant Contact, Inc., TD Ameritrade, Inc., E Trade Brokerage Services, and Abacus America initially without notice to Mrs. Lebed or her attorneys, and to impose sanctions on Plaintiffs and/or their counsel for violating Rule 45((b)(1) of the Federal Rules of Civil Procedure. The grounds for this Motion are as follows:

**Background**

1.      Plaintiffs Stockwire Research Group, Inc. and Adrian James (collectively, "Stockwire")

filed this action on October 10, 2007. Initially, Stockwire claimed that Jonathan Lebed ("Jonathan"),

by himself and through his companies, Lebed Biz, L.L.C. ("LBLLC") and Pigasa, Inc. ("Pigasa"),

infringed on copyrights and trademarks belonging to Stockwire and violated various federal and

Florida laws with respect to Jonathan's use of Stockwire material beginning in August 2007 on a

website Jonathan operates to provide stock research and analysis. DE # 1.

2.      Jonathan is allegedly a competitor of Stockwire in the "market for advertising, business

management, consultancy, stock research, analysis and information" apparently about heretofore

unknown and predicted to become successful stock offerings. Amended Complaint at ¶¶ 105, 176.

3.      On or about November 6, 2007, Stockwire filed an Amended Complaint consisting of 211

numbered paragraphs. DE # 3. In its amended pleading, Stockwire added Jonathan's mother – Mrs.

Lebed – as a defendant. Mrs. Lebed is a New Jersey resident who has worked as a secretary in the

past and who several years ago obtained a license to sell homes in her community. She has no

training or license to work in the securities markets and does not and has never worked in her son's

business.[1]  Based on information that Plaintiffs' counsel has as yet refused to produce to her,

Stockwire allegedly obtained information that made it decide to add her as a party.[2]

---

[1] Mrs. Lebed earlier filed a motion to dismiss the amended complaint against her for lack of personal jurisdiction, but has now decided to forego that defense in order to allow this case against her to be resolved in this jurisdiction rather than risk having to hire new counsel and defend again in another action in New Jersey.

[2] Counsel to Mrs. Lebed has asked by letter for this information but has now served a formal discovery request.

4.    In the first paragraph of its prolix pleading, Stockwire aggregates all of the defendants as "Defendants" and throughout the pleading paints with a broad brush, essentially accusing Mrs. Lebed of being responsible for everything her son and his companies allegedly did going back more than eight years ago and referring to conduct unrelated to the claims in this case.[3]

5.    In a handful of paragraphs, Stockwire accuses Mrs. Lebed of being involved in a "securities scheme" (a cause of action which is not actually alleged in this case), ¶ 4; of controlling the content of Jonathan's website,¶ 6; [4] of financially benefitting from the schemes of Jonathan and his companies and receiving "lavish gifts" from her son , ¶¶ 36, 42, 43; of being his legal guardian in 2000 when he was the subject of an SEC cease and desist order (which has nothing to do with any claim in this case), ¶ 39; of "encouraging" Jonathan to promote stocks and commit "fraud" from her home (which even if true would not state a claim for relief here); ¶¶ 40, 41; of having "actual and constructive knowledge of the Defendants infringing activities," *based, it seems on letters she received about one week before she was sued* and of "taking no action to stop the infringement," ¶¶ 44, 45, 46. Without explanation, Stockwire alleges that LBLLC is the "alter ego" of Jonathan and Mrs. Lebed. ¶¶ 54, 62.

---

[3] While in high school and still living in his family home, Jonathan as a precocious teen- ager began doing business over the computer. When he was still in high school, he became somewhat famous for the stock market advise he gave and was the subject of an SEC investigation and cease and desist order which was issued and resolved several years ago. Although he moved out of his family home several years ago after finishing high school, Jonathan Lebed until recently continued to use the family address for businesses he operated or at least he failed to change the address he had used. Mrs. Lebed is a defendant in this case because she lives at that address and did not open her son's mail and interfere in his business, a business she knows little about.

[4] Stockwire also alleges that Jonathan is guilty of certain conduct using "Mrs. Lebed's account with non-party service provider CI Host, Inc.", ¶¶ 21, 38, but that in itself is not an allegation of any wrongdoing by Mrs. Lebed, herself a victim of Jonathan's cavalier use of her identity.

6.    Finally, at ¶ 85 of the Amended Complaint, Stockwire explains what this lawsuit is really about.  Stockwire alleges that sometime after July 31, 2007 and continuing in some fashion until early November 2007,  Jonathan, through his corporations LBLLC and Pigasa, allegedly pirated Stockwire's  protected video promoting a penny stock and put it on the internet through You Tube and other means causing Stockwire harm. ¶ 92.  For the next 106 paragraphs, there are no allegations specific to Mrs. Lebed at all.  Indeed, other than the incorporation of the above allegations into each count, Mrs. Lebed is not sued for any alleged misdeed but is lumped in with the other "Defendants" in Counts I, II, III, and  X, which are, respectively, counts for statutory claims of copyright infringement, destruction of copyright management information, circumvention of copyright protection systems and a common law claim called false light in the public eye, the latter brought by Plaintiff Adrian James alone.

7.    Mrs. Lebed, as one of the lumped together "Defendants", stands accused of wilfully and unlawfully having violated federal copyright and trademark laws and somehow violating Florida common law as to Adrian James.

8.    At bottom, the only things Mrs. Lebed is even accused of in the facts of the Amended Complaint are (a) owning a website that her adult son Jonathan may have used unlawfully, (b) failing to prevent her adult son Jonathan from continuing to use the family address for business or other reasons after he moved to his own home, ©) failing to open mail addressed to companies started by and belonging to her adult son Jonathan but delivered to her address; (d) failing to stop her adult son Jonathan from operating his business in a way that may have violated the law; and (e) receiving nice, perhaps even lavish, gifts from her adult son. Even if true, and all of these allegations are not, that

would not be sufficient conduct to expose Mrs. Lebed to massive discovery of her personal records going back to 2003.[5]

9.    On February 26, undersigned counsel to Mrs. Lebed and Plaintiffs' counsel Peter Koziol had a lengthy conversation initiated by the  undersigned to introduce herself and talk about the case, including discovery.  Nevertheless, between February 25 and March 4, 2008, Plaintiffs' counsel issued seven subpoenas to non-parties without any kind of notice to Mrs. Lebed or her counsel who had filed a notice of appearance on February 12, 2008 using the ECF system and who, as stated above, had telephoned Plaintiffs' counsel on February 26, 2008.

10.    On February 29, counsel to Mrs. Lebed served her response to plaintiffs' Second Request for Production, objecting on overbreadth and other grounds to the abusive and overreaching requests for financial and other information preceding the alleged wrongful acts by nearly nine years. Attached as Exhibit A is a copy of the discovery and the response.

**The Subpoenas Issued Without Notice Violated Rule 45**

11.    On March 10, 2008, Mrs. Lebed received a letter from American Express, stating that it had been served with a subpoena duces tecum for her records on February 29, 2008 and advising Mrs. Lebed that her complete account records for the past nine years would be produced in 14 days if she did not take steps to prevent their production.  A copy of that letter is attached as **Exhibit 1.** Undersigned counsel – who had *not* received notice in any fashion of this subpoena – learned of this and immediately notified Plaintiffs' counsel Peter Koziol by faxed and emailed letter, asking him

---

[5] Initially, Plaintiffs subpoenaed records back to 1999 but after being advised that Mrs. Lebed was going to file a motion to quash and for sanctions based on the fact that her counsel received no notice of the existence of the non-party subpoenas, they withdrew those seven subpoenas and immediately reissued them with the only difference being a reduced time frame and a slightly longer response date. See Exhibit 8.

to withdraw the subpoena at once. A copy of that letter is attached as **Exhibit 2**. American Express was also notified. A copy of the letter to it is attached as **Exhibit 3**. The next day, counsel to Mrs. Lebed sent another letter to Peter Koziol asking if any other subpoenas had been served for records concerning Mrs. Lebed. A copy of that letter is attached as **Exhibit 4**. Plaintiffs' counsel responded with a letter transmitting by fax six other subpoenas duces tecum, and claiming that they had all been served by mail on one day. A copy of that letter is attached as **Exhibit 5**. In his letter, Mr. Koziol stated he would *not* withdraw the subpoenas, but offered to allow more time for Mrs. Lebed to object. He also disclosed that two of the non-parties had already produced documents and he offered to "sequester" them. The documents are from TD Ameritrade and Abacus America. Plaintiffs' counsel agreed by telephone and by letter on March 11, 2008 that he would immediately send copies of the subpoenaed documents that had been received to date to the undersigned. These documents were finally received by the undersigned in a format that counsel could not read. Thus, despite a conversation on March 13 when Mrs. Lebed's undersigned counsel told Mr. Koziol that he should fax or hand deliver the documents that he said he had sent electronically at least twice. Not until March 17th were the documents received and over 1000 pages are still unintelligible.

12.     Counsel for both sides conferred later on March 13th, but could not reach agreement as to a compromise since the subpoenas constituted an end run around the objections already filed by Mrs. Lebed and were even more probing. Plaintiffs' counsel also declined, when asked, to produce an affidavit from his office assistant affirming that she had served the original subpoenas and the means she had used to get them to Mrs. Lebed's counsel.

13.     Of particular note is the fact that the subpoenas were *not* all issued on the same date and mailed in a single envelope that conceivably could have been "lost in the mail."

14.    In fact, on February 25, 2008, Plaintiffs issued subpoenas to non-parties America Online, TD Ameritrade and E-Trade Brokerage Services and then served each of them again, according to the certificate, on February 27, 2008.  Then, on February 27,  Plaintiffs' counsel issued subpoenas to non parties American Express with a return date of March 10, 2008 and to Abacus America with a return date of March 10, 2008.  On March 4, Plaintiffs' counsel issued subpoenas to non-parties Discover Financial Services with a return date of March 21, 2008, and on Constant Contact with a return date of March 18, 2008.

15.    Although supposedly mailed on three different dates, *none of the above subpoenas were served on the undersigned*.  The "mailed" copies have never been received nor, according to Plaintiffs' counsel can he produce evidence that they were returned to him for lack of postage or a legible address or any reason.

16.    Significantly, despite the phone conversation between the parties on February 26,  Mr. Koziol never  mentioned the seven subpoenas he had issued and was in the process of causing to be served nor did he think to fax or email them.  Shortly after, undersigned counsel received other correspondence from Mr. Koziol including a letter *faxed* and mailed on March 6.  A copy of that letter is attached as **Exhibit 6**.

17.    Moreover, Mrs. Lebed  had, on February 29,  responded to Plaintiffs' Second Rule 34 Request for Production and had objected on various grounds to the production of many of the same documents Plaintiffs sought to obtain with the above-described subpoenas.  A copy of that request and the response to it as well as the First Request for Production and her response are attached as **Composite Exhibit 7.**

18.    On March 17, undersigned counsel, who was about to file this Motion in an earlier form, received a letter from Mr. Koziol dated March 14 *but faxed late on March 17*, stating that Plaintiffs on March 14 had withdrawn the subpoenas (without mention of those to which a response had already been delivered) and issued new subpoenas with a return date of March 27 that each shortened the scope of the demand for documents to five years instead of ten.   A copy of that letter (without the voluminous documents from TD Ameritrade and Abacus America) is attached as **Exhibit 8**. Those "new" subpoenas are still overbroad and seek personal information that is not justified given the allegations against Mrs. Lebed.[6]   Mrs. Lebed objects to them and requests that they be quashed or, at minimum, substantially narrowed and that any documents that are produced in response to them be examined in camera before allowing Plaintiffs to use them.

## **LEGAL ARGUMENT**

### 1.    **The New Subpoenas Should be Quashed Because of the Original Violation**

A subpoena is a formal method of discovery and a party issuing a subpoena must follow the notice requirements of Rule 45. *Florida Media v. World Publications, LLC,* 236 F.R.D. 693, 694 (M.D. Fla. 2006). When issuing a subpoena, an attorney is invoking the court's power to require a third party to produce documents. *Id.*   Specifically, Rule 45(b)(1) requires "prior notice of any commanded production of documents or things or inspection of premises before trial shall be served on each party in the manner prescribed by Rule 5(b)." *Id.*

---

[6]  Although the letter states on page 1 that it was faxed on March 14, the fax cover sheet is dated March 17 after business hours.

Plaintiffs counsel's issuance and service of subpoenas on companies with whom Mrs. Lebed did business or may have done business without notifying Mrs. Lebed's counsel at the time is a clear violation of Rule 45(b)(1) of the Federal Rules of Civil Procedure. It is implausible that subpoenas served by mail on three different dates would not have arrived at the addressee more than three weeks after the first were allegedly mailed, but they have not. Plaintiffs' counsel or those who work under him seem to have knowingly and purposefully chosen not to notify Mrs. Lebed of the subpoenas sent to non-parties in clear violation of the Federal Rules of Civil Procedure that they have now re-issued subpoenas does not right the wrong, especially since two of them were already answered before Mrs. Lebed ever knew of them. The purpose of the "prior notice" clause is to give opposing counsel the opportunity to object to the subpoena before the return date set forth in the subpoena. *Florida Media v. World Publications, LLC,* 236 F.R.D. 693, 694 (M.D. Fla. 2006) (citing *Butler v. Biocore Med. Tech, Inc.*, 348 F.3d 1163, 1173 (10th Cir. 2003)). **If an objection is made, then the party who issued the subpoena cannot view the acquired materials without an order of the court from which the subpoena was issued. Rule 45(c)(2)(B). In order for the objection to be meaningful, notice "must be given well in advance of the production date."** *Florida Media,* 348 F.3d at 694 (citing *Butler,* 348 F.3d at 1173).

In this case, Plaintiffs sent seven subpoenas to non-parties seeking extensive personal financial information of Mrs. Lebed without first notifying Mrs. Lebed or her counsel as required by Rule 45. Only because one of the non-parties had a procedure for alerting its customers of such subpoenas, did Mrs. Lebed or her counsel even know that any subpoenas had been issued and served. Fortunately, American Express chose to notify their customer – Mrs. Lebed -- that her records had been subpoenaed. Plaintiffs were obligated to notify Mrs. Lebed of the subpoenas so Mrs. Lebed

would have an opportunity to object. The re-issued subpoenas of March 14th do not cure anything and still only give the non-parties up to March 27th to respond. Plaintiffs have blatantly violated Rule 45(b)(1) and therefore the subpoenas must be quashed.

2.    **The "new" subpoenas are overbroad, vague and demand documents that are largely irrelevant or premature and invade the privacy of Mrs. Lebed.**

The "new" subpoenas on their face are overbroad and purport to ask for every single record of transaction or anything concerning Mrs. Lebed in the files of her credit card companies, brokers, and internet service providers going back more than four years before the alleged unlawful conduct occurred. The information sought in the "new" subpoenas is largely irrelevant and overbroad as to time and the character of the information being requested. Mrs. Lebed objects to them for all the reasons she has objected to the same kind of requests in her responses to the First and Second Rule 34 requests, copies of which are attached as **Composite Exhibit 7**.

The scope of discovery under a subpoena is the same as the scope of discovery under Rules 26 and 34. *Barrington v. Mortgage IT, Inc.,* 2007 WL 4370647 at *3 (S.D. Fla. 2007) (citing *Chamberlain v. Farmington Sav. Bank,* No. 3:06CV01437 (CFD), 2007 WL 2786421 at *1). *Wagner v. Viacost.com,* No. 06-81113-Civ, 2007 WL 1879914 (S.D. Fla. 2007). Therefore, the court must determine whether the scope of the subpoenas duces tecum in this case is overbroad, burdensome, irrelevant and not likely to lead to the discovery of admissible evidence or is otherwise overreaching and subject to objection.

Rule 26(b)(1) provides "parties may obtain discovery regarding any non-privileged matter that is relevant to any parties claim or defense. . . . The party resisting discovery has the burden to prove its objections by showing that the request "(1) does not come within the scope of relevance

as defined in Fed.R.Civ.P. 26(b)(1) or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure. *Id.* (citing *Wagner v. Viacost.com,* No. 06-81113-Civ, 2007 WL 1879914 at *1 (S.D. Fla. 2007))

That burden can be met in this case by examining the allegations of the Amended Complaint and comparing them to the scope of the subpoenas. The requests are wildly overbroad and have no bearing on the alleged wrongdoing. Except for the discovery concerning Abacus America and CI Host, there is no basis for seeking Mrs. Lebed's American Express and Discover statements and she is providing that information. Everything else those companies have concerning Mrs. Lebed is beyond any issue in this case, at least, it is at this point when there has been no showing that Mrs. Lebed is in control of the defendant corporations or Jonathan. The subpoenas demand documents that are plainly irrelevant to the claims at issue in this action and not likely to lead to the discovery of admissible evidence. Plaintiffs are conducting a fishing expedition at the expense of Mrs. Lebed. (Mrs. Lebed also adopts her responses to the First and Second Requests for Production, see **Composite Exhibits 7** in support of this motion.).

## II. Sanctions are Appropriate

A court, pursuant to its inherent powers, may sanction conduct considered to be an abuse of the judicial process. *See Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991). When imposing sanctions under its inherent powers, the court must find that the conduct in question was "without a colorable basis" and done in bad faith, for example, "motivated by improper purposes such as harassment or delay." *Murphy v. Board of Education of the Rochester City School District*, 196 F.R.D. 220, 225 (W.D.N.Y. 2000) (citing *Schlaifer Nance & Co.,* 194 F. 3d at 336).

In *Murphy,* one issue was whether plaintiffs' counsel had a colorable basis to issue a dozen non-party subpoenas without providing notice to opposing counsel. *Id.* at 225. The court had to consider whether the plaintiffs' attorney had "some legal and factual support, considered in light of the reasonable beliefs of the individual." *Id.* (citing *Revson v. Cinque & Cinque,* 221 F.3d 71, 79 (2d Cir. 2000) (quoting *Nemeroff v. Abelson,* 620 F.2d 339, 348 (2d Cir. 1980)). The plaintiffs' counsel was aware of Rule 45, but ignored it. *Murphy*, 196 F.R.D. at 226. The court in *Murphy* held that there was no colorable basis, under law or fact, to support the issuance of subpoenas without giving prior notice. *Id*. at 225. "Rule 45 could not be clearer." *Id.* Next, in order to impose sanctions, the *Murphy* court conducted a factual analysis to determine if there had been bad faith on the part of the party who had failed to give notice of the issuance of the subpoenas. *Id.* This requires an examination of the evidence. *Id.* at 226 (citing *DLC Management Corp. v. Town of Hyde Park,* 163 F.3d 124, 136 (2d Cir. 1998) (citing *United States v. International Brotherhood of Teamsters*, 948 F.2d 1338, 1345 (2d Cir. 1991)). The court held there was clear evidence of bad faith because the actions of plaintiffs' counsel could not be seen as anything other than deceitful since his purpose was to have been to obtain and review the documents in question before opposing counsel had the chance to object. *Id.* Similar to *Florida Media*, and *Teamsters*, *supra*, Plaintiffs' counsel in this case never disclosed to counsel to Mrs. Lebed that he had subpoenaed the non-parties or that he had already received documents. *Id.*

Here, Plaintiffs' counsel provided no colorable basis, legally or factually, for why counsel did not provide counsel to Mrs. Lebed with notice of the non-party subpoenas. In fact, in the letter Mr. Koziol authored on March 11, 2008, he continued to insist that the subpoenas were all served on Mrs. Lebed's counsel despite his admission that he did not personally mail them and conducted

-12-

little investigation of how nothing ever reached Mrs. Lebed's counsel about any of the seven subpoenas. He could not supply a reasonable explanation or even a sworn statement from his secretary.

Further, clear evidence of bad faith can be inferred since not one of the original subpoenas reached defense counsel. Plaintiffs' counsel was well aware that the undersigned represented Mrs. Lebed. During the period of time the subpoenas were issued and served, the undersigned corresponded with Plaintiffs' counsel by telephone and mail. Yet, Mrs. Lebed's counsel learned of the subpoenas from American Express. The court should sanction Plaintiffs and/or their counsel or issue an order to show cause why they should not be sanctioned and conduct an evidentiary hearing if there remains any doubt.

## RELIEF REQUESTED

Based on the foregoing, Defendant Constance Lebed requests that the Court (a) quash each of the non-party "new" subpoenas issued by Plaintiffs' counsel based on her objections; (b) require Plaintiffs' counsel to notify the subpoenaed parties who have not responded to the subpoena by email or fax, mail and telephone that production is not required or is postponed until the court rules on this motion and objections if ruling is delayed pending an evidentiary hearing; ©) require documents delivered to Plaintiffs' counsel to immediately be returned to the producing non-party pending the court's ruling; (d) preclude Plaintiffs from using in this action any subpoenaed documents delivered to Plaintiffs' counsel pursuant to the original subpoenas issued without notice; (e) require that all future subpoenas from Plaintiffs to non-parties, if any, be filed in the court file so that the court and opposing counsel may monitor Plaintiffs' counsel's conduct; and (f) impose a monetary sanction on

Plaintiffs and/or their counsel in an amount equivalent to Mrs. Lebed's attorneys' fees and costs incurred in connection with the preparation of this Motion.

## CERTIFICATION OF PRE-FILING CONFERENCE

Pursuant to Local Rule 7.1(A)(3), undersigned counsel for movant Mrs. Lebed certifies that, prior to filing the instant motion, she conferred verbally and in writing repeatedly with Plaintiffs' counsel in a good faith effort to resolve by agreement the issues raised in the instant motion but was unable to do so.

s:/Susan H. Aprill
e-mail:  saprill@fowler-white.com
Fla. Bar No. 346934
FOWLER WHITE BURNETT P.A.
Espirito Santo Plaza, 14th Floor
1395 Brickell Avenue
Miami, Florida 33131-3302
Telephone: (305) 789-9200
Facsimile: (305) 789-9201

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 20, 2008, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s:/Susan H. Aprill

**SERVICE LIST**
Stockwire Research vs. Lebed
CASE NO. 07-22670 CIV-SEITZ/MCALILEY
U.S. DISTRICT COURT, SOUTHERN DISTRICT OF FLORIDA

Peter E. Berlowe
Email:peb@assoulineberlowe.com
Assouline & Berlowe, P.A.
3250 Mary Street, Suite 308
Miami, FL 33133
Telephone: (305) 567-5576
Facsimile: (305) 567-9343
*Attorney for Plaintiffs*
Service via transmission of Notices of
Electronic Filing generated by CM/ECF

Peter A. Koziol
Email:pak@assoulineberlowe.com
Assouline & Berlowe, P.A.
213 East Sheridan Street, Suite 3
Dania Beach, FL 33004
Telephone: (954) 929-1899
Facsimile: (954) 922-6662
*Attorney for Plaintiffs*
Service via transmission of Notices of
Electronic Filing generated by CM/ECF

Jonathan Lebed
49 Ivy Place
Wayne, NJ 07470
*Pro se Defendant*

W:\74714\MOTSAN03--RULE 45 VIOLATION.SUA March 17, 2008 (7:29pm)

-16-