UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 07-22670 CIV-SEITZ/MCALILEY

STOCKWIRE RESEARCH GROUP, INC.
a Florida corporation, and
ADRIAN JAMES, a Texas Resident.

                    Plaintiffs,

vs.

JONATHAN LEBED, a Florida resident,
LEBED BIZ, L.L.C., a New Jersey Limited
Liability Company, PIGASA, INC., a New
Jersey Corporation, and CONSTANCE LEBED,
a New Jersey Resident.

                    Defendants.
_____/

PLAINTIFFS STOCKWIRE RESEARCH GROUP, INC'S AND ADRIAN JAMES'
MOTION FOR FINAL DEFAULT JUDGMENT AGAINST
DEFENDANTS JONATHAN LEBED, PIGASA, INC., AND LEBED BIZ, LCC

    Plaintiffs, Stockwire Research Group, Inc. ("Stockwire") and Adrian James (collectively

the "Plaintiffs"), pursuant to Federal Rule of Civil Procedure 55(b)(2) and this Court's Order dated

February 8, 2008 [DE 42], move for the entry of a Final Default Judgment against Defendants, Jonathan

Lebed, Pigasa, Inc. ("Pigasa") and Lebed Biz, LLC ("Lebed Biz"), (collectively the "Defendants"), and as

grounds state the following:

I.      PRELIMINARY STATEMENT

            Beginning sometime in July of 2007, and continuing through the date of this filing,

Defendants and their co-conspirators have, without authorization, used Stockwire's technically protected

copyrighted and trademarked property in a purposeful campaign (the "Campaign") directed at misleading

the public.  The Campaign has continued despite repeat notices from Plaintiffs' and other third parties,

and Defendants' clear and obvious knowledge of this lawsuit.  As part of the Campaign, Defendants

removed Stockwire's trademarks and copyright management information from Stockwire's videos that

Defendants distributed in an effort to create the false impression that Defendants are associated with

Dockets.Justia.com

Stockwire, that Defendants' illicit campaign was endorsed by Stockwire's President Adrian James, and to conceal their copyright infringement.

Thus, Stockwire seeks damages and injunctive relief from Defendants under: the Copyright Act, 17 U.S.C. §§ 106, 502, 503, 504, 1201, 1202, 1203, for direct, vicarious and contributory infringement, removal of copyright management information, and circumvention of technical protection measures; the Lanham Act, 15 U.S.C. §§ 1116, 1117, 1125, for Unfair Competition; Florida Law for Unfair Competition; Florida Law for Tortious Interference Business Relations; and, the Florida Deceptive and Unfair Trade Practices Act, Florida Statute §§ 501.201 - 501.213. James seeks damages and injunctive relief from Defendants under: the Lanham Act, 15 U.S.C. §§ 1116, 1117, 1125, for Unfair Competition; Florida Law for Unfair Competition; Florida Law for Tortious Interference Business Relations; the Florida Deceptive and Unfair Trade Practices Act; Florida Statute §§ 501.201 - 501.213; Florida Statute § 540.08 for the Unauthorized Publication of likeness; Florida Law for Misappropriation; and, Florida Law for casting Plaintiff Adrian James in a false light in the public eye.

## II.    PROCEDURAL BACKGROUND

On November 9, 2007, Pigasa's registered agent was served with process at its ordinary place of business in Cedar Grove, NJ. [DE 10].  On November 28, 2007, by and through counsel, Defendants Jonathan Lebed, and Lebed Biz accepted service of the Summons and Complaint.  The Affidavit of Acceptance of Service was filed with this Court on December 5, 2007.  [DE 13].  Counsel for Defendants Jonathan Lebed, Pigasa, and Lebed Biz filed a Motion to Strike Portions of the Complaint, which was denied by the Court on February 7th, 2008.  *See* Scheduling Order [DE 42].

Defendant Constance Lebed filed a Motion to Dismiss for Lack of Personal Jurisdiction,[1] in support of which Defendant Jonathan Lebed submitted a declaration. [DE 18-3].  In the Court's Scheduling Order corporate Defendants Pigasa, and Lebed Biz were instructed to obtain new counsel within 30 days or face default.  *See* Scheduling Order [DE 42].  Defendant Jonathan Lebed was instructed

---

[1] This motion has apparently been withdrawn. [DE 42] at 2, note 1.

**ASSOULINE & BERLOWE, P.A.**
3250 Mary Street, Suite 308, Miami, Florida 33133 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

to proceed *pro se* and to comply with the Federal Rules of Civil Procedure. *See* Scheduling Order [DE 42], and Order of Instructions to *Pro Se* Litigant (Feb. 12, 2008) [DE 41]. As of the date of this filing, no answer to the Amended Complaint has been filed by Defendants Jonathan Lebed, Pigasa and Lebed Biz who have failed to plead or otherwise defend as required by law.

Since the withdraw of Amaury Cruz and Christopher J. Van Dam, P.A., the undersigned has been unable to confer with counsel for Defendants Jonathan Lebed, Pigasa and Lebed Biz (pursuant to Local Rule 7.1(A)(3)), because no response was filed and no appearance has been made in this case on their behalf. *See* Scheduling Order [DE 42], and Second Declaration of Amaury Cruz, Esq. pursuant to this Court's Order of February 7, 2008. (Feb. 21, 2008) [DE 45]. On February 21, 2008, now former counsel for Defendants, Amaury Cruz, Esq., declared that he served this Court's Scheduling Order and the Order of Instructions to *Pro Se* Litigant on Jonathan Lebed. 2d Decl. Amaury Cruz, Esq. [DE 44]. The signature of Jonathan Lebed accepting delivery of the Scheduling Order and the Order of Instructions to *Pro Se* Litigant as referenced in the 2d. Decl. of Amaury Cruz, Esq. [DE 44] matches known signatures of Jonathan Lebed. *See* attached Composite Exhibit A; *see also* Decl. J Lebed. [DE 18-3].

Despite Defendants' knowledge of their infringement of Stockwire's copyrights, Defendants continue, as of the date of this filling, to actively infringe Stockwire's copyrights, violate Stockwire's Copyright Management Information, and assist others in circumventing Stockwire's Technical Protection Measures. *See* Decl. of A. James, President of Stockwire Research Group, Inc., attached hereto as Exhibit B; *see also* Ltr. to Abacus America, Inc. and Lebed, et. al. Re: § 512 Take Down Notice (Mar. 21, 2008), attached hereto as Composite Exhibit C. A portion of the damages Stockwire seeks against Defendants is liquidated as minimum statutory damages of $32,411,500.00.[2] *See generally* Amended Complaint [DE 3]; Decl. of A. James.

---

[2] $32,411,500.00, is the minimum statutory damages allowed by law for Counts II, and III, and is substantially less than the $346,140,711.25 sought in the Amended Complaint.

### III.    UNDISPUTED FACTS AND STANDARD FOR DEFAULT JUDGMENT

Upon their default, defendants "admit the plaintiff's well-pleaded allegations of fact." *Buchanan v. Bowman*, 820 F.2d 359 (11th Cir. 1987). If the facts in the complaint are sufficient to establish liability, then the court must conduct an inquiry to ascertain the amount of damages. *See Ortiz-Gonzalez v. Fonovisa*, 277 F.3d 59, 62-63 (1st Cir. 2002); *Arista Records, Inc. v. Beker Enter., Inc.*, 298 F.Supp.2d 1310, 1312 (S.D.Fla. 2003). As set forth above, Defendants have failed to respond to the Amended Complaint or this Court's order dated February 12, 2008, and are therefore in default. Thus, Plaintiffs incorporate all facts alleged in the Amended Complaint [DE 3] into this motion; and, also incorporate the attached Exhibit B, Decl. of A. James.

Damages may be awarded where the record adequately reflects the basis for the award via a hearing or a demonstration of detailed affidavits establishing the necessary facts. *See Adolph Coors Co. v. Movement Against Racism and The Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985). However, "where 'the issue is statutory damages,' the court can hold an inquest into damages 'on a paper record' rather than through an in-person court hearing. *Chanel, Inc. v. French*, 2006 WL 3826780 (S.D. Fla. Dec. 27, 2006) citing *Rolex Watch, USA, Inc. v. Brown*, 2002 WL 1226863, *2 (S.D.N.Y. 2002).

In the instant case, a hearing is unnecessary to determine damages, because Plaintiff seeks statutory damages, and has attached detailed declarations with accompanying documentary evidence to this motion. It is well established in the Circuit that District courts have wide discretion in awarding statutory damages. *Cable/Home Communication Corp. v. Network Prod., Inc.*, 902 F.2d 829, 852 (11th Cir. 1990); *Microsoft Corp. v. Tierra Computer, Inc*., 184 F. Supp. 2d 1329, 1331 (N.D. Ga. 2001). *See also e.g. PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1223 (S.D. Fla. 2004) (awarding $800,000.00 in statutory damages for the use of the domain names www.MedPets.com and www.1888MedPets.com which infringed on PetMed Express, Inc.'s trademarks). Plaintiffs therefore ask that this Court issue Final Default Judgment as to liability and equitable relief for all claims, and for

4

**ASSOULINE & BERLOWE, P.A.**
3250 Mary Street, Suite 308, Miami, Florida 33133 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

damages for those claims that have liquidated or statutory damages as to Defendants Jonathan Lebed,

Pigasa, and Lebed Biz.

## IV. PLAINTIFFS ARE ENTITLED TO DEFAULT JUDGMENT AS TO ALL COUNTS WITH STATUTORY AND LIQUIDATED DAMAGES EXCEEDING $32,411,500.00

### A. Stockwire is Entitled to a Minimum of $45,000.00 in Damages for Count I From Defendants for their Willful Violation of Stockwire's Copyright

Stockwire is entitled to at least $45,000.00 in liquidated damages for Defendants' profits

in violating its copyrights. Decl. of A. James ¶¶ 24, 39. In order to show copyright infringement, a

plaintiff need only show: (1) a valid copyright; and (2) a violation of one of its exclusive rights under the

Copyright Act. 17 U.S.C. § 101, et. sq. The Copyright Act specifies that a certificate of registration of a

copyright is prima facie evidence of the validity of the copyright and of the facts stated in the certificate.

17 U.S.C. § 410(c); *See also Melville B. Nimmer, et al., Nimmer On Copyright* § 12.11 [B] (explaining

that the registration certificate creates presumption that work is copyrightable).

Stockwire attached a copy of its copyright registration for the Stockumentary to the

Amended Complaint [DE 3-2]. Thus, Stockwire's copyright therein is presumed to be valid, and the

burden is on Defendants to proffer sufficient evidence to challenge its validity. 17 U.S.C. § 410(c).

Defendants have not answered the Amended Complaint, and thus have raised no challenge to the validity

of Stockwire's copyright registrations. By way of default, Defendants have admitted that Stockwire has a

valid copyright registration, and that they willfully and maliciously violated that copyright. Amended

Complaint ¶¶ 64, 68, 85-94, 114; *see also* Amended Complaint, Exhibit B [DE 3-2] (Copyright

Certificate for the Stockumentary); and, Exhibit B, Decl. of A. James ¶¶ 19-25, 33, 43, 46, 49, 69-71.

A plaintiff in a copyright action is entitled to actual damages and its lost profits caused by

an infringement of its copyright. 17 U.S.C. § 504. In recovering actual damages a plaintiff is entitled to

the infringers' profits and needs only to show the infringers' gross sales.[3] It is a defendant's burden to

show each deduction from the gross sales figure, in order to reduce the amount of plaintiff's claim. *Id.* In

_____

[3] Absent proof of deductible expenses, the plaintiffs are entitled to damage award of gross revenue from sale of infringing goods. *See e.g. Williams v. Arndt*, 626 F.Supp. 571 (D.Mass. 1985).

5

**ASSOULINE & BERLOWE, P.A.**
3250 Mary Street, Suite 308, Miami, Florida 33133 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

this instance, Defendants admit that they were paid at least $45,000.00 in conjunction with the use of Stockwire's Stockumentary for their securities scam,[4] but Defendants have not offered any evidence or claim of deductions. Thus, Stockwire is entitled to judgment as a matter of law as to this portion of Stockwire's damages.

Stockwire is also entitled to its lost profits which exceed $3,200,000.00,[5] but it believes that injunctive relief, and the minimum combined statutory damage award for Counts II and III of $32,411,500.00 would be sufficient to deter Jonathan Lebed, his co-conspirators, and others, from engaging in the same or similar schemes in the future. In light of this, Stockwire asks that the actual copyright damages of between $45,000.00 and $3,2000,000.00 be included in damages for Count II, and III at this point. Consequently, the Court should award Stockwire $3,200,000.00 on Count I of the Amended Complaint.

**B.      Stockwire is Entitled to a Minimum of $29,465,000.00 in Damages for Count II For Defendants' Willful Removal of Copyright Management Information**

By way of default, Defendants have admitted to willfully and maliciously removing, distributing, and violating, Stockwire's Copyright Management Information at least 11,786 times. *See* Amended Complaint ¶¶ 85-96, 117-132. Decl. of A. James ¶¶ 40, 46. The Digital Millennium Copyright Act ("DMCA" or the "Act") prescribes that no person shall, without the authority of the copyright owner,

> (1) intentionally remove or alter any copyright management information,
> (2) **distribute** or import for distribution copyright management information knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law . . . knowing, or with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title.

---

[4] Amended Complaint ¶ 29, 39, 50, 67.

[5] Exhibit B, Decl. of A. James ¶ 67.

**ASSOULINE & BERLOWE, P.A.**
3250 Mary Street, Suite 308, Miami, Florida 33133 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

17 U.S.C. § 1202(b) (emphasis added.)  Under the Act, copyright management information ("CMI") includes the title, author, and copyright owner of the work, and the terms and conditions of use.[6] 17 U.S.C. § 1202(c).  The evidence of record, and Defendants' default, establish that all of this information was removed from Stockwire's Stockumentary by Defendants. Amended Complaint ¶¶ 85-96, 117-132; Decl. of A. James ¶¶ 20, 31, 35.

Damages relating to violation of the integrity of Copyright Management Information are provided for in § 1203 of the DMCA.  In relevant part, § 1203(c)(3)(B) provides that "[a]t any time before final judgment is entered, a complaining party may elect to recover an award of statutory damages **for each violation** of section 1202 in the sum of not less than $2,500 or more than $25,000." § 1203(c)(3)(B) (emphasis added).  In this case, where it is undisputed that at least 11,786 violations occurred, the court must find damages within the range prescribed by Congress.  *Id.*  In exercising its discretion as to what level of statutory damages to award in that range, the Court should consider the nature of the malicious and willful behavior of Defendants, which continued, and amplified despite Defendants' receipt of multiple cease and desist letters and the pendency of this lawsuit.  *See PetMed Express,* 336 F.Supp.2d 1213 at 1220-21.  Moreover, the court should take into account Defendants' purposes in violating Stockwire's CMI was not just to conceal its infringement, but to associate the copyrighted works with Defendants and their ring leader, Jonathan Lebed, who by his own efforts is one of the most notorious security fraudsters in the history of the stock market.  *See Exhibit A* attached to Plaintiffs' Response to Defendants' Motion to Strike [DE 26-2]. *See also* Amended Complaint; Decl. of A. James ¶ 58. [7]

---

[6] "CMI need not be in digital form, but CMI in digital form is expressly included." S. REP. 105-190, 1998 WL 239623 at 16 (1998).

[7] *See e.g.* Mark C. Taylor Confidence Games: Money and Markets in a World Without Redemption, 195 (forthcoming University of Chicago Press 2007); John. Armour, Joseph A. McCahery After Enron: Improving Corporate Law and Modernising, 85 (Hart Publishing 2006); Charles Gasparino, Blood on the Street: The Sensational Inside Story of How Wall Street, 195 (Simon and Schuster 2005); Marianne Jennings Business: Its Legal, Ethical, and Global Environment, 305 (Thomson West 2005); Paul. Bocij, Cyberstalking: Harassment in the Internet Age and How to Protect Your Family, 141 (Greenwood Press 2002); Howard M. Friedman, Securities Regulation in Cyberspace, 13-18 (Aspen Publishers 2004 Supplement). Jill E. Fisch, Regulatory Responses To Investor Irrationality: The Case Of The Research Analyst, 10 LCLR 57, 70-71 (2006); Moin A. Yahya, The Law & Economics Of "Sue And Dump":

7

**ASSOULINE & BERLOWE, P.A.**
3250 Mary Street, Suite 308, Miami, Florida 33133 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

Therefore for Count II, the court could find statutory damages against the Defendants for $319,175,000.00 ($25,000.00 multiplied by the 12,767 times that Google reports the Defendants violated the CMI), but at this time Stockwire only seeks $29,465,000.00, which is the <u>minimum</u> statutory damages calculated by the number of violations alleged in the Amended Complaint. Consequently, the Court should award Stockwire $29,465,000.00 on Count II of the Amended Complaint.

## C. Stockwire is Entitled to a Minimum of $2,357,200.00 in Damages for Count III For Defendants' Willful and Malicious Removal of Technical Protection Measures

By way of default, Defendants have admitted to willfully and maliciously providing services and devices that circumvented Stockwire's Technical Protection Measures at least 11,786 times. *See* Amended Complaint ¶¶ 133-154; Decl. of A. James ¶¶ 40, 46. The DMCA prescribes that no person shall circumvent a technological measure that effectively controls access to a work. 17 U.S.C. § 1201(a)(1)(A). Nor should any person manufacture, offer to the public, provide or traffic in any technology, product, service, device, or component that is primarily designed or produced for the purpose of circumventing a technological measure. § 1201(a)(2). "At any time before final judgment is entered, a complaining party may elect to recover an award of statutory damages for **each violation** of section 1201 in the sum of not less than $200 or more than $2,500 **per act of circumvention, device, product, component, offer, or performance of service,** as the court considers just." § 1203(c)(3)(A) (emphasis added).[8]

---

Should Plaintiffs' Attorneys Be Prohibited From Trading The Stock Of Companies They Sue? 39 Suffolk U. L. Rev. 425, 435-436 (2006); David B. Kramer, The Way It Is And The Way It Should Be: Liability Under §10(B) Of The Exchange Act And Rule 10b-5 Thereunder For Making False And Misleading Statements As Part Of A Scheme To "Pump And Dump" A Stock, 13 U. Miami Bus. L. Rev. 243 (2005).

[8] In enacting the DMCA, Congress undoubtedly was aware of the Copyright Act and the damages calculations for Copyright infringement. Nonetheless, Congress did not adopt the damage formulation used in § 504(a)(1). Instead, Congress chose specific and unambiguous language that a separate award of statutory damages would be available for each violation of the DMCA's anti-circumvention provisions. § 1203(c)(3)(A). Congress limited a court's discretion in awarding statutory damages to "not less than $200 or more than $2,500 per act of circumvention, device, product, component, offer, or performance of service." *Id.*

**ASSOULINE & BERLOWE, P.A.**
3250 Mary Street, Suite 308, Miami, Florida 33133 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

Software, like that used by Stockwire (and circumvented by Defendants), enables a copyright holder to control the download of video or other materials distributed online is a technical protection measure. *See e.g. RealNetworks, Inc. v. Streambox, Inc.,* 2000 WL 127311 (W.D. Wash. Jan. 18, 2000); *see also, Universal City Studios, Inc. v. Reimerdes*, 111 F. Supp. 2d. 294 (S.D.N.Y. 2000) (technological measure is deemed to effectively control access as long as its function is to control access); and *Davidson & Associates v. Jung*, 422 F.3d 630 (8th Cir. 2005) (holding that development and distribution of alternative to seller's online gaming service, in order to allow other purchasers to circumvent seller's technological measures controlling access to online gaming mode, violated DMCA's trafficking prohibitions). In fact, Stockwire specifically used streaming technology to control the distribution of its content and prevent users from downloading or modifying its Stockumentary. Decl. of A. James ¶¶ 11-17. Defendants' circumvention of Stockwire's streaming technology and bypassing its user agreements violates Stockwire's technical protection measures, and enables users to access Stockwire's copyrighted materials without Stockwire's authorization or control. Decl. of A. James ¶¶ 21-22.

Stockwire is entitled to statutory damages "for each violation . . . per act of circumvention, device, product, component, offer, or performance of service." 17 U.S.C. § 1203. For example, in *Sony Computer Entertainment America, Inc. v. Divineo, Inc*., 457 F. Supp. 2d 957, 958-67 (N.D. Cal. 2006) the court awarded $3,750,200.00 in statutory damages for 10,000 violations plus attorneys' fees. Similarly, in *Sony Computer Entertainment America, Inc. v. Filipiak*, 406 F. Supp. 2d 1068, 1069-75 (N.D. Cal. 2005), the court analogized statutory damages under the DMCA to violations of the Federal Communications Act, and held that § 1203(c)(3)(A) "authorizes a separate award of statutory damages for each device . . . [w]hile this award of damages is substantial. . . it is both consistent with Congressional intent and necessary to discourage wrongful conduct . . . in what might otherwise appear to be a lucrative business.") *Filipiak* at 1075-76. It is undisputed that Defendants provided their service and products circumventing Stockwire's technical protection measures over 11,786 times. *See* Amended Complaint ¶¶ 133-154. Decl. of A. James ¶ 29. In fact there is evidence that Defendants distributed over

**ASSOULINE & BERLOWE, P.A.**
3250 Mary Street, Suite 308, Miami, Florida 33133 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

12,767 circumvention devices.  Decl. of A. James ¶ 39; Exhibit D.  Nimmer has explained:

> For anti-circumvention violations, the statute sets the figure from $200 to $2,500, as the court considers just. But those figures do not apply per violation of a single copyrighted work, as pertains to statutory damages under the [Copyright Act]. Instead, that amount within the statutory range can be compounded; the multiple applies "per act of circumvention, device, product, component, offer, or performance of service.

3 Melville B. Nimmer, et al., Nimmer On Copyright § 12A.13[B] (2006).

In exercising its discretion as to which damages to award in that range, the Court should consider the nature of the malicious and willful behavior of Defendants, which continued and amplified despite Defendants' receipt of multiple notices including cease and desist letters.  *See attached* Composite Exhibit E.    Moreover, the Court should take into account Defendants' purposes in violating the Stockwire's technical protection measures was not just to gain access to Stockwire's copyrighted works, but to use those works in Defendants' securities scam while falsely associating themselves with Plaintiffs. The Court should also consider the fact that, as of March 21, 2008, Defendants continue to defiantly abuse Plaintiffs copyrights, CMI and TPM.  Decl. of A. James ¶¶ 69-72.  In this case, as to Count III, where it is undisputed that at least 11,786 violations occurred, the court should find damages within the range prescribed by Congress, or in other words between $2,357,200.00 and $29,465,000.00.    In fact considering the Defendants' willful, intentional and repeat violations, and that 12,767 violations actually occurred, and the Court could award $31,917,500.00.  However, Stockwire only seeks $2,357,200.00, obtained by multiplying the number of circumventions cited in the complaint by the minimum statutory damages.  Consequently, the Court should award Stockwire $2,357,200.00 on Count III of the Amended Complaint.

### D.    Plaintiffs are Entitled to at Least $135,000.00 in Damages for Count IV For Defendants' Willful and Malicious Federal Unfair Competition

To prevail on a claim for Federal Unfair Competition, Plaintiffs have the burden of proving the following elements by a preponderance of the evidence: (1) the defendant(s) used a symbol, term or device, on/or in connection with, goods, services, or a container for goods; (2) the use of the

symbol, term or device is likely to cause confusion, or cause mistake, deceive as to the origin of the defendant(s)' goods or services. 15 U.S.C. § 1125(a). The "touchstone of a section 1125(a) unfair competition claim is whether the defendant's actions are 'likely to cause confusion.'" *Hidalgo Corp. v. J. Kugel Designs, Inc.*, 509 F.Supp.2d 1247 (S.D. Fla. 2007) (quoting *Matrix Essentials, Inc. v. Emporium Drug Mart, Inc.*, 988 F.2d 587, 592 (5th Cir. 1993)). By defaulting, Defendants have admitted to these elements, which were well pled in the Amended Complaint.

Specifically, Defendants not only removed Stockwire's trademarks and Plaintiffs' other identifying information from the Stockumentary to create the "Pirated Video" (as defined in the Amended Complaint), but also misrepresented the Pirated Video as being their own. Amended Complaint ¶¶ 157-158; Decl. of A. James ¶ 39. Defendants' use of the Pirated Video in connection with Defendants' services is likely to cause the public to mistakenly believe that Defendants' business activities and services originate from, are sponsored by, or are in some way associated with, those of Plaintiffs. Amended Complaint ¶ 159; Decl. of A. James ¶ 26-28. Defendants' use of the Pirated Video in connection with Defendants' services is also likely to cause the public to mistakenly believe that Plaintiffs' business activities and services originate from, are sponsored by, or are in some way associated with, those of Defendants. Amended Complaint ¶ 160; Decl. of A. James ¶ 26-28. Defendants persisted in using the Pirated Video with the full knowledge of Plaintiffs' rights. Decl. of A. James ¶¶ 26-28. Thus, Defendants have willfully violated Plaintiffs' rights under 15 U.S.C. §1125(a). Amended Complaint ¶ 163. Moreover, Defendants' willfulness is further evidenced by their continued misrepresentations and abuse of Plaintiffs' rights. Decl. of A. James ¶¶ 69-72. When the court finds willful unfair competition it may treble damages according to the "circumstances of the case." 15 U.S.C. 1117(a)(3). The circumstances of this case and the willfulness of the Defendants supports an award of $135,000.00, calculated by trebling $45,000.00, which is the amount Defendants admitted as their profits, and which is a minimal measure of the actual damages to which Plaintiffs are entitled. Consequently, the Court should award Plaintiffs $45,000.00 on Count IV of the Amended Complaint.

**ASSOULINE & BERLOWE, P.A.**
3250 Mary Street, Suite 308, Miami, Florida 33133 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

**E.     Plaintiffs are Entitled to at Least $45,000.00 in Damages for Count V For Defendants' Tortious Interference with Plaintiffs' Business Relations**

Defendants intentionally interfered with Plaintiffs' business relationships with Zegal, Amedia Networks, Inc., and others.  In order to establish a prima facie case of tortious interference with a business relationship, a plaintiff must establish the following four elements:  (1) the existence of a business relationship, not necessarily evidenced by an enforceable contract; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and, (4) damages to the plaintiff as a result of the breach of the relationship.  *Popular Bank of Florida v. R.C. Asesores Financieros, C.A.*, 797 So.2d 614, 622 (Fla. 3d DCA 2001).

Defendants knew that both Plaintiffs Stockwire and James are in the business of creating and licensing content, and had business relationships with Amedia Networks, Inc. and Zegal. Amended Complaint ¶ 170; Decl. of A. James ¶ 39.   Despite this knowledge, Defendants acted in a manner designed to disrupt Plaintiffs' existing and future business relationships with Zegal regarding services and products related to Plaintiffs' content creation, research, analysis, advertising, business management, and consultancy.  Amended Complaint ¶ 169.   Decl. of A. James ¶¶ 26-28, 38, 52-53 57-58.   Defendants interfered with and, unless enjoined by the Court, continue to interfere with, Plaintiffs' existing and prospective business relationships, by misappropriating and/or diminishing the value of Plaintiffs' intellectual property and misleading consumers that have existing or prospective business relationships with Plaintiffs.  Amended Complaint ¶ 171; Decl. of A. James ¶ 39. Defendants' conduct is willful, intentional, and in wanton disregard for Plaintiffs' rights.  Amended Complaint ¶ 173.  Decl. of A. James 69-72.   As a direct and proximate result of Defendants' tortious conduct, as described hereinabove, Plaintiffs have been irreparably injured.  Amended Complaint ¶ 172. Decl. of A. James ¶ 58.  Defendants should be enjoined from further tortuous interference with Plaintiffs' business relations, and, at a minimum, be forced to disgorge their profits, which by party admission and default were at least $45,000.00. Consequently, the Court should award Plaintiffs both $45,000.00 on Count V of the Amended Complaint.

**ASSOULINE & BERLOWE, P.A.**
3250 Mary Street, Suite 308, Miami, Florida 33133 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

**F.      Plaintiffs are Entitled to at Least $45,000.00 in Damages for Count VI For Defendants' Common Law Unfair Competition**

In order to establish a claim in a Florida Unfair Competition cause of action, a plaintiff must establish (1) the deceptive or fraudulent conduct of a competitor; and (2) a likelihood of consumer confusion. *See e.g. Third Party Verification, Inc. v. Signaturelink, Inc.*, 492 F. Supp. 2d 1314, 1324-1325 (M.D. Fla. 2007); *American Heritage Life Insurance Company v. Heritage Life Insurance Company*, 494 F.2d 3, 14 (5th Cir.1974) (defining Florida common law of unfair competition as an "umbrella for all . . . causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters"). Here, Defendants' deceptive conduct created a likelihood of consumer confusion, and damaged Plaintiffs at a minimum of $45,000.00, the known amount paid to Defendants in cash for passing off Plaintiffs as being affiliated with them.

Notably, Defendants are Plaintiffs' competitors in the market for advertising, business management, consultancy services, stock research, analysis and information. Amended Complaint ¶ 176; Decl. of A. James ¶¶ 3, 4. Defendants engaged in acts which constitute unfair competition under the laws of the State of Florida. Specifically, Defendants unlawfully used intellectual property belonging to Stockwire to obtain competitive advantage for their own products and services in the market. Amended Complaint ¶ 177; Decl. of A. James ¶¶ 5, 6, 7-72. Defendants passed off Plaintiffs' work as Defendants' own intellectual property. Amended Complaint ¶ 178; Decl. of A. James ¶¶ 7-72. Defendants unlawfully used the likeness, reputation and personality of James for their own promotional purposes without permission or compensation of James. Amended Complaint ¶ 179. Decl. of A. James ¶¶ 5, 6, 7-72. Defendants used Plaintiffs' intellectual property for their own benefit without compensation to Plaintiffs. Amended Complaint ¶ 180. Decl. of A. James ¶¶ 5, 6, 7-72. Unauthorized use of a Stockwire's intellectual property and James' likeness constitute acts of unfair competition. Amended Complaint ¶ 181. Decl. of A. James ¶¶ 5, 6, 7-72. Defendants' actions have been conducted with malice and ill will. Amended Complaint ¶ 182; Decl. of A. James ¶¶ 69-72. Plaintiffs have been damaged as a direct result of the Defendant's actions. Amended Complaint ¶ 183; Decl. of A. James ¶¶ 67-68.

**ASSOULINE & BERLOWE, P.A.**
3250 Mary Street, Suite 308, Miami, Florida 33133 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

Defendants should be enjoined from further acts of unfair competition with Plaintiffs, and, at a minimum, Defendants should be forced to disgorge their profits which were by their own admission, and their default at least $45,000.00. Consequently, the Court should award Plaintiffs $45,000.00 on Count VI of the Amended Complaint.

> **G.** **Plaintiffs are Entitled to at Least $45,000.00 in Damages for Count VII For Defendants' Florida Deceptive and Unfair Trade Practices**

By misappropriating Plaintiffs' names, image, copyrights, trademarks and representing them as their own, Defendants engaged in unfair methods of competition, unconscionable acts or and unfair and deceptive acts in trade and commerce. In particular, Defendants' actions were likely to mislead consumers.

Aggrieved parties like Plaintiffs should prevail as to a Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") claim against a party who has engaged in "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." *See* Fla. Stat. §501.204(1). However, FDUTPA does not define the elements of such an action. *See* §501.204(1), Fla. Stat. (1999). As an alternative, FDUPTA provides that the Federal Trade Commission ("FTC") and federal court interpretations of section 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C § 45(a)(1) should provide guidance. *See* § 501.204(2), Fla. Stat. (1999). According to the federal decisions, a deceptive practice is one that is "likely to mislead" consumers. *See In re International Harvester Co.*, 104 F.T.C. 949 (1984); *In the Matter of Cliffdale Assocs., Inc.*, 103 F.T.C. 110 (1984); *Southwest Sunsites, Inc. v. Federal Trade Comm'n*, 785 F.2d 1431 (9th Cir. 1986). An "unfair practice" is "one that 'offends established public policy' and one that is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *Samuels v. King Motor Co. of Fort Lauderdale*, 782 So.2d 489, 499 (Fla. 4th DCA 2001) (quoting *Spiegel, Inc. v. Fed. Trade Comm'n*, 540 F.2d 287, 293 (7th Cir.1976)).

Defendants unlawfully used intellectual property belonging to Plaintiffs, including unauthorized use of Stockwire's copyrights, James' likeness and James' personality to obtain competitive

advantage for their own services in the market. Amended Complaint ¶ 185. Decl. of A. James ¶¶ 25-28, 31, 32. Defendants also removed source identifying information, copyright notices, and technical protection measures from Plaintiffs' intellectual property to pass it off as their own. Amended Complaint ¶ 186; Decl. of A. James ¶¶ 28-24. Defendants' actions constitute unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce in violation of Florida Statute § 501.204. Amended Complaint ¶ 187. Defendants have willfully undertaken these unlawful acts, as under Florida Statute § 501.204, and knew or should have known that such uses or practices were unlawful. Amended Complaint ¶ 188. Plaintiffs have been damaged by Defendants' unlawful actions. Amended Complaint ¶ 189. Decl. of A. James ¶¶ 28-29. Defendants' illegal actions trick consumers into believing Plaintiffs were and are affiliated with Defendants. Defendants should be enjoined from further deceptive and unfair trade practices, and, at a minimum, be forced to disgorge their profits which by party admission and default were at least $45,000.00. Consequently, the Court should award Plaintiffs $45,000.00 in Damages for Count VII of the Amended Complaint.

**H.     James is Entitled to at Least $45,000.00 in Damages for Count VIII For Defendants' Unauthorized Publication of His Likeness**

In order to prevail in an Unauthorized Publication of Name or Likeness claim, a plaintiff must establish the "defendant(s) published, printed, displayed or otherwise publicly used the name, portrait, photograph or other likeness of any person for purposes of trade or for any commercial or advertising purpose; and without the express written or oral consent to such use." Fla. Stat. § 540.08.[9] Accordingly, by prohibiting the use of one's name or likeness for trade, commercial or advertising purposes, Fla. Stat. § 540.08 is designed to prevent the unauthorized use of a name to directly promote the product or service of the publisher. Thus, the publication is harmful not simply because it is included in a publication that is sold for a profit, but rather because of the way it associates the individual's name or his personality with something else. *Loft v. Fuller*, 408 So.2d 619, 622 (Fla. 4th DCA 1981).

---

[9] The term "commercial purpose" as used in section 540.08(1) indicates one who directly promotes a product or service. *Tyne v. Time Warner Entertainment Co., L.P.*, 901 So.2d 802, 810 (Fla. 2005).

Defendants misappropriated James' likeness for trade, commercial, and advertising purposes by the unauthorized fabrication and use of the Pirated Video. Amended Complaint ¶ 191; Decl. of A. James ¶¶ 31-32, 39. The Pirated Video was distributed for the purpose of currently promoting a stock for Defendants' benefit. Amended Complaint ¶ 192. Defendants were compensated for their use of James' likeness. Amended Complaint ¶ 193. Decl. of A. James ¶¶ 29-39. Defendants willfully misappropriated James' likeness with wanton disregard for James' rights under the law. Amended Complaint ¶ 194. Defendants' falsely associated themselves with James. Defendants' use of James' likeness was unauthorized by James. Amended Complaint ¶ 195; Decl. of A. James ¶¶ 26-28. As a direct and proximate result of Defendants' concerted actions, James has suffered severe emotional distress, mental anguish, loss of sleep, embarrassment, humiliation, and damages. Amended Complaint ¶ 196. Decl. of A. James ¶ 30. Defendants should be enjoined from further misappropriation with James likeness, be compelled to take corrective actions, and, at a minimum, they should be forced to disgorge their profits which by party admission and default were at least $45,000.00. Consequently, the Court should award Stockwire $45,000.00 on Count VIII of the Amended Complaint.

## I.   James is Entitled to at Least $45,000.00 in Damages for Count IX For Defendants' Misappropriation of His Likeness

By using James' likeness, Defendants were able to receive at least $45,000.00 in cash from Zegal. Misappropriation of ones' name or likeness is a common law invasion of privacy. *See Agency for Health Care Admin. v. Associated Indus. of Fla., Inc.*, 678 So.2d 1239, 1252 n. 20 (Fla. 1996). Misappropriation requires that a plaintiff establish "the unauthorized use of a person's name or likeness in order to obtain some benefit." *Id.* By way of default, Defendants admit that they used James' name and likeness in order to receive at least $45,000.00 in cash, not to mention the much far reaching damage Defendants caused to James personally and professionally. Decl. of A. James ¶ 30.

Defendants intentionally, willfully, deliberately, and maliciously misappropriated James' name and likeness for trade, commercial, and advertising purposes by using the Pirated Video to promote a third-party stock, and Defendants did so with wanton disregard for the timeliness of the information

imparted or James' rights under the law. *See* Amended Complaint ¶ 198; Decl. of A. James ¶¶ 26-28, 30. Defendants were directly compensated for their use of James' likeness. Amended Complaint ¶ 199; Decl. of A. James ¶¶ 24-29. Defendant's use of James' likeness was not authorized by James. Amended Complaint ¶ 200; Decl. of A. James ¶ 24. As a direct and proximate result of Defendants' concerted actions, James has suffered severe emotional distress, mental anguish, loss of sleep, embarrassment, humiliation, and other damages. Amended Complaint ¶ 201; Decl. of A. James ¶ 30. Consequently, as to Count IX, Defendants should be: (i) enjoined from further misappropriation with James likeness; (ii) compelled to take corrective actions; and, at a minimum, (iii) forced to disgorge their profits which by party admission and default were at least $45,000.00.

**J.      James is Entitled to at Least $45,000.00 in Damages For Count X For Defendants' Placing Him in a False Light in the Public Eye**

When Defendants used James' voice, likeness and image in conjunction with their securities scam they placed James in a false light in the public eye. A right to privacy is invaded when publicity unreasonably places the plaintiff in a false light before the public. Restatement (Second) of Torts, Sec. 652A (1977); s*ee also Agency for Health Care Admin. v. Associated Indus. of Fla., Inc.*, 678 So.2d 1239, 1252 n. 20 (Fla. 1996). A claim for false light in the public eye includes publication of facts that place a person in a false light even though the facts themselves may not be defamatory. *Id*. In a false light cause of action, a plaintiff must establish that: (a) the false light in which the plaintiff was placed would be highly offensive to a reasonable person; and, (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed. Restatement (Second) of Torts, Sec. 652E (1977). James has established the elements necessary for a finding of liability as to false light in a public eye, and an entitlement to punitive damages for Defendants' willful and malicious conduct by the record evidence and Defendants' default.

Defendants' use of James' likeness was unauthorized by James. Amended Complaint ¶ 203; Decl. of A. James ¶ 24. As created and used by Defendants, the Pirated Video was highly offensive to James and would be offensive or embarrassing to a reasonable person.

Amended Complaint ¶ 204; Decl. of A. James ¶¶ 30-58. At the time the Pirated Video was distributed, market factors had changed from when the original Stockumentary was distributed to its authorized users. Amended Complaint ¶ 205; Decl. of A. James ¶ 58. James' opinions and the supporting information contained in the video were no longer current at the time when Defendants edited and published James likeness to currently and actively promote a third-party stock. Amended Complaint ¶ 206; Decl. of A. James ¶¶ 36-38. Defendants willfully and falsely represented to the public that the Pirated Video was representative of James' current analysis. Amended Complaint ¶ 207; Decl. of A. James ¶¶ 38, 58. Defendants' use of the highly edited and manipulated Pirated Video with James as part of Defendants' stock promotion scheme created a false association between James and Defendants that was unauthorized and fraudulent, and therefore cast James in a false light in the public eye. Amended Complaint ¶ 208; Decl. of A. James ¶ 58. Defendants' distribution of the Pirated Video containing James' likeness wrongfully implied that the Pirated Video was being distributed with James' permission and approval, at the time it was distributed for the purpose for which it was distributed. Amended Complaint ¶ 209. Through their fraudulent and unauthorized association with James, Defendants created a false appearance that James participated in and condoned Defendants' misleading stock representations, unlawful market manipulations, and stock swindles. Amended Complaint ¶ 210; Decl. of A. James ¶ 58. As a direct and proximate result of Defendants actions, James has suffered severe emotional distress, mental anguish, loss of sleep, embarrassment, humiliation, and damages. Amended Complaint ¶ 211; Decl. of A. James ¶ 30. Defendants should be: (i) enjoined from further misappropriation with James likeness; (ii) compelled to take corrective actions; and, (iii) at a minimum be forced to disgorge their profits which by party admission and default were at least $45,000.00.

A proposed Final Judgment is attached for this Court to consider.

**WHEREFORE**, Stockwire prays that this motion be granted and a **Final Default Judgment upon which execution may issue** be entered in favor of Plaintiff Stockwire and against Defendants Jonathan Lebed, Lebed Biz, LLC, and Pigasa, Inc. jointly and severally for: (i) liability as to

18

**ASSOULINE & BERLOWE, P.A.**
3250 Mary Street, Suite 308, Miami, Florida 33133 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

all counts; (ii) damages in the amount of at least **$32,411,500.00;**[10] (iii) prejudgment interest from the August 1, 2007, the date of indebtedness at the prejudgment interest rate of 11%[11]; iv) a permanent injunction:

      a.      seizing, and then destroying of any device, or product involved in Defendants' violations, pursuant to 17 U.S.C. § 1203;

      b.      compelling Defendants Jonathan Lebed, Lebed Biz, LLC, and Pigasa, Inc., their officers, directors, agents, affiliates, and co-conspirators to deliver all infringing materials to Plaintiffs or in the alternative destruction thereof, pursuant to 17 U.S.C. § 1203; 15 U.S.C. §§ 1116, 1118;

      c.      enjoining Defendants Jonathan Lebed, Lebed Biz, LLC, and Pigasa, Inc., their officers, directors, agents, affiliates, and co-conspirators from any further unauthorized publication, printing, display or other public use of James' likeness by Defendants, their officers, directors, agents, affiliates, and co-conspirators;

      d.      enjoining Defendants Jonathan Lebed, Lebed Biz, LLC, and Pigasa, Inc., their officers, directors, agents, affiliates, and co-conspirators from any use of any mark confusingly similar to Plaintiffs' trademarks, names or likeness;

      e.      enjoining Defendants Jonathan Lebed, Lebed Biz, LLC, and Pigasa, Inc., their officers, directors, agents, affiliates, and co-conspirators, their officers, directors, agents, affiliates, and co-conspirators permanently, from any further interference with Plaintiffs' prospective or existing business relations;

      f.      requiring that Defendants, their subsidiaries, parent companies, and other organizations substantially controlled by Defendants for the following year add the following provision to

---

[10] *See supra* at 3 note 2.
[11] *See A.R. Lantz Co. v. United Trans-Caribbean*, 1987 WL 54388 (S.D. Fla. Jun. 26, 1987) (finding that since no federal statute establishes a prejudgment interest rate, the Court may utilize Florida's statutory interest rate under Fla. Stat. §55.03); *Smith v. American International Life Assurance Co. of New York,* 50 F.3d 956, 958 (11th Cir. 1995) (similarly holding that District Court's have discretion as to which prejudgment interest rate to use).

**ASSOULINE & BERLOWE, P.A.**
3250 Mary Street, Suite 308, Miami, Florida 33133 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

all their legal disclaimers on their web sites and press releases in a conspicuous manner and in at least 12 point font:

> A judgment was rendered in March of 2008 against Jonathan Lebed, Lebed Biz, LLC, and Pigasa, Inc. finding that these infringers maliciously and intentionally without authorization willfully violated Stockwire Research Group, Inc.'s copyrights and trademarks. Jonathan Lebed, Lebed Biz, LLC and Pigasa, Inc., their related entities, affiliates, and the actions thereof, are in no way affiliated, sponsored, approved, or endorsed by Stockwire Research Group, Inc., Adrian James or any of Stockwire's or Adrian James' affiliates.

v) costs and attorney's fees pursuant to 17 U.S.C. § 1203, 15 U.S.C. § 1117(a), Florida Statute §§ 501.2105; and, vi) granting such other relief as this Court finds just, fair, and equitable.

**Dated: March 25, 2008**               Respectfully submitted,

**ASSOULINE & BERLOWE, P.A.**
3250 Mary Street, Suite 308
Miami, Florida 33133
Telephone: 305-567-5576
Facsimile: 305-567-9343

By: s/Peter A. Koziol
Peter E. Berlowe (FBN 143650)
peb@assoulineberlowe.com
Peter A. Koziol (FBN 0030446)
pak@assoulineberlowe.com

*Attorneys for Plaintiffs*
*Stockwire Research Group, Inc., and*
*Adrian James*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via the methods referenced below this day March 25, 2008 on all counsel or parties of record on the service list indicated below:

### <u>SERVICE LIST</u>

*Stockwire Research Group, Inc. v. Lebed, et. al.*
**CASE NO.: 07-22670 CIV-SEITZ/MCALILEY**
**United States District Court, Southern District of Florida**

<u>**U.S. Mail**</u>

**Defendant Jonathan Lebed**
lebed316@aol.com
49 Ivy Place
Wayne, New Jersey 07470
Telephone No.: (862) 377-1768

**Defendant Lebed Biz, LLC**
c/o Jonathan Lebed
49 Ivy Place,
Wayne, New Jersey 07470
Telephone No.: (862) 377-1768

**Defendant Pigasa, Inc.**
c/o Jonathan Lebed, Registered Agent
26 Sunset Terrace
Cedar Grove, NJ 07009
Telephone No.: (201) 321-3976

<u>**U.S. Mail**</u>

SUSAN H. APRILL, ESQ.  (FBN: 346934)
saprill@fowler-white.com

Fowler White Burnett, P.A.
Espirito Santo Plaza, 14th Floor
1395 Brickell Avenue
Miami, Florida 33131-3302
Telephone: (305) 789-9200
Facsimile: (305) 789-9201

*Attorneys for the Defendant*
*Constance Lebed*

By: s/Peter A. Koziol_____
Peter A. Koziol

**ASSOULINE & BERLOWE, P.A.**
3250 Mary Street, Suite 308, Miami, Florida 33133 • Telephone: 305-567-5576 • Facsimile: 305-567-9343