## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No.: 07-22670 CIV-SEITZ/MCALILEY

**STOCKWIRE RESEARCH GROUP, INC.**
**a Florida corporation, and**
**ADRIAN JAMES, a Texas Resident.**

                **Plaintiffs,**

**vs.**

**JONATHAN LEBED, a Florida resident,**
**LEBED BIZ, L.L.C., a New Jersey Limited**
**Liability Company, PIGASA, INC., a New**
**Jersey Corporation, and CONSTANCE LEBED,**
**a New Jersey Resident.**

                **Defendants.**
_____/

### SECOND DECLARATION OF ADRIAN JAMES

I, Adrian James, declare pursuant to 28 U.S.C. § 1746, and under penalty of perjury as follows:

1) My name is Adrian James, I am over the age of (21) twenty-one years of age and am fully competent to make this Declaration. The facts stated herein are true and correct and within my personal knowledge.

2) I am the president of Stockwire Research Group, Inc. ("Stockwire"), and also the other named Plaintiff in this lawsuit (collectively the "Plaintiffs").

3) Stockwire is the copyright owner, and production company for the interactive multimedia audiovisual work registered with the United States Copyright Office, Reg. No. PA 1 — 374 — 332, attached to the Amended Complaint as Exhibit B, [DE 3-2] (the "Stockumentary").

4) Defendants used ripping tools to make unauthorized copies of Stockwire's Stockumentary.

5) The ripping tools removed technical protection measures that enabled Stockwire to control many things related to its copyrights including, but not limited to: access to the Stockumentary; availability of the Stockumentary; the content of the Stockumentary; the reproduction of the Stockumentary; the ability to make derivative works of the Stockumentary; and the terms and conditions of use of the Stockumentary.

6) The Defendants then edited the Pirated Product to remove all copyright management information, and cut other portions that identified Stockwire and me.

7) The Pirated Product was intentionally designed to be distributed without Stockwire's technical protection measures and copyright management information.

8) Each copy of the Pirated Product prevented Stockwire from exerting its copyrights over: access to the Stockumentary; availability of the Stockumentary; the content of the Stockumentary; the reproduction of the Stockumentary; the ability to make derivative works of the Stockumentary; and, the terms and conditions of use of the Stockumentary.

9) Each copy of the Pirated Product enabled it users to circumvent Stockwire's Technical Protection measures, and enable users of the Pirated Product to control: access to the Stockumentary; availability of the Stockumentary; the content of the Stockumentary; the reproduction of the Stockumentary; the ability to make derivative works of the Stockumentary; and, the terms and conditions of use of the Stockumentary.

10) On August 1, 2007, I personally witnessed Defendant Lebed Biz, LLC through its Youtube page report that 11,786 copies of the Pirated Product had been reproduced

and distributed by the Defendants without the Stockwire technical protection measures and copyright management information. *See* Exhibits C and D, attached to the Amended Complaint.

11) The Defendants used Youtube (in addition to their own web site) as a source distribution for the video, because Google/Youtube provides a trusted independent counter for downloads which showed the demand for the Pirated Product, which Defendants used for their commercial advantage.

12) I know this because I received emails from the Defendants reporting that the Pirated Product was the most highly distributed video on Youtube at the time.

13) Defendant Jonathan Lebed sent multiple mass emails (the "SPAM") to me and other recipients of Defendants' SPAM.

14) The SPAM emails were personally directed to me and other persons that I know.

15) The SPAM instructed each of us individually that we must download and watch the Pirated Product.

16) The SPAM claimed that the Pirated Product was the number one most watched video on Youtube.

17) Upon a subpoena issued to Google, Inc., owner of Youtube, LLC, Google reported to Stockwire that the Pirated Product had been viewed through Youtube 12,767 times.

18) Apparently the Pirated Product has been downloaded approximately 1,000 times after Stockwire sent the take down letter to Youtube, before Google was able to take down the content.

19) Besides the emails that Defendant sent out (most of which reference the Pirated Product) it appears that Defendant did nothing else to promote the stock or further investor relations when he was paid by Zegal & Ross.

20) The fair market value of a license to use the Stockumentary in a promotional campaign is at least $400,000.00 per month.

21) Recently, Stockwire was provided with a 1.5 million dollar production budget for a Stockumentary for PASO.OB. As compensation, Stockwire was also provided restricted stock in PASO.OB.

22) In 2006, Stockwire licensed the very Stockumentary at issue to Amedia in exchange $435,000.00 and 250,000 shares of stock.

23) On March 17, 2006 the day Stockwire was hired by Amedia, Amedia stock was trading at $.89 per share.

24) Thus, Stockwire was compensated at least $657,500.00, $435,000.00 cash plus in stock $222,500.00 ($.89 x 250,000) for the original distribution of the Stockumentary.

25) During the term of the license for Amedia, Stockwire maintained control of the Stockumentary which was provided under a restricted licensed protected by Technical Protection Measures and not an unrestricted and unprotected manner like that unlawfully distributed and duplicated by the Defendants.

26) Stockwire's ability to control how and when its videos are viewed is critical to its viewers, it reputation, and marketing strategies.

27) For instance, when Stockwire provided other persons access to the Stockumentary it did so only in a controlled manner.

28) When Stockwire provided people access to the Stockumentary it was able to control information that regularly supplemented, and/or that was provided in conjunction with the Stockumentary.

29) The stock price for Amedia ranged between $.28 and $1.08 per share, with an averaged of approximately $.69 for the period of one year immediately after Stockwire first provided access to the Stockumentary for Amedia.

30) On July 30, 2007 the first day that Defendants were using the Pirated Product the closing price for Amedia Stock was $.44 per share.

31) After Defendants began offering, performing and distributing copies of the Pirated Product the stock price for Amedia AANI.OTB dropped to less than $.05 within weeks, eventually going to less than 1/1000 of one cent per share in only a few months after Defendants began using the Pirated Product to push the stock.

32) On August 30, 2007 the reported closing price for Amedia Stock was $.05 per share.

33) On September 28, 2008 the reported closing price for Amedia Stock was $.01 per share.

34) On November 30, 2008 the reported closing price for Amedia Stock was $0.0052 per share.

35) Subsequent to the Stockumentary at issue Stockwire has produced and licensed other multimedia presentations for companies such as Southridge Ethanol, Inc., and Quantum Energy, Inc. which have been licensed for $1,250,000.00, and $1,650,000.00 in cash respectively.

36) Stockwire's license to Southridge Ethanol, Inc. was for the period of October 16, 2006 to January 1, 2007 and at the rate of $500,000.00 per month.

37) Stockwire's license to Quantum Energy, Inc. was for the period of July 7, 2006 through November 27, 2006 and at the rate of $455,555.00 per month.

38) At a minimum, for copyright infringement of Stockwire's registered copyright, Stockwire is entitled to actual damages of $3,644,440.00, of which includes: Defendants' $45,000.00 admitted profits; and, $3,644,440.00 which is Stockwire's lost profits calculated by multiplying the minimum market monthly rate for an eight month period of infringement of the Defendants (from at least July 31, 2007 to March 20, 2008).

39) I know that Defendant Lebed is aware of this law suit, because in retaliation he has called my office and made death threats on my life, which I reported to the Texas police.

40) I know that Defendant Lebed is aware of this law suit, because he filed a declaration in support of Constance Lebed's motion to Dismiss.

41) I know that Defendant Jonathan Lebed is aware of this law suit, because within the past month he has created approximately 30 different user accounts on the Stockwire web site to spam Stockwire and its users.

42) When Stockwire discovered Mr. Lebed flooding our forums and spamming our users, Stockwire deleted his accounts and blocked his computer.

43) Despite these steps taken by Stockwire, Mr. Lebed continues to create new accounts to SPAM the Stockwire.com web site, in retaliation to this law suit.

44) In retaliation to this law suit, Mr. Lebed has posted messages in public forums that Stockwire is a scam.

45) In retaliation to this law suit, Mr. Lebed has posted public messages on the Internet that I am gay, which is not true.

46) In retaliation to this law suit, Mr. Lebed has repeatedly posted messages in public forums and to recipients of his email SPAM that they should short stocks that Stockwire is promoting including Spicy Pickle Franchising, and Patient Access Solutions.

47) In retaliation to this law suit, Mr. Lebed created an account on Stockwire.com in my name, Adrian James, and sent private messages to users of my web site that Stockwire is scamming them.

48) In retaliation to this law suit, Mr. Lebed also published the website stockwiresucks.com, the URL of which he privately messages to Stockwire subscriber's through the Stockwire.com website online instant messaging forum, despite being repeatedly banned from the Stockwire.com website.

49) In addition to posting a message on Youtube along side the Pirated Product that Lebed Biz, LLC was paid $45,000.00 for an investors relation contract where used the video, Jonathan Lebed also sent me several emails about this including the one that is attached hereto as *Exhibit A*.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: July 16, 2008

_____
Adrian James

AANI closed today up another 12% to $0.48. It is already up 32% since I announced it as my big pick one month ago.

You only have Tuesday and Wednesday left to get in before AANI's 9 for 1 dividend.

If you buy 100,000 shares of AANI, you will receive a dividend of 900,000 shares on Thursday and own one million shares.

Look at what I just found regarding AANI from CashFlowNews.com:

"CashFlowNews.com reports that EBITDA for Amedia networks Inc (OTC BB:AANI) for its second quarter ended June 30, 2007 was a positive $487,068, compared with a negative EBITDA of $(604,607) for the comparable year earlier quarter.

Prior to this positive quarter Amedia networks had generated twenty-five consecutive quarters of negative EBITDA. EBITDA for the most recent quarter also reached a nine year high. For Amedia networks twelve months ended June 30, 2007 EBITDA was $(2,000,847), compared with $(7,239,670), a 72% improvement over the comparable year earlier twelve months. EBITDA for the most recent twelve months also reached a six year high.

EBITDA defined by CashFlowNews.com: EBITDA (Earnings Before Interest Taxes Depreciation and Amortization) is calculated by taking Operating Income and adding or subtracting depreciation and/or amortization."

-----

My firm Lebed Biz LLC has been compensated by a third-party (Zegal and Ross) $45,000 cash for a two-month AANI investor relations contract. Never invest into a stock we discuss unless you can afford to lose your entire investment. For our full disclaimer go to: www.lebed.biz/disclaimer.htm

Jonathan Lebed
Lebed.biz

Exhibit A to Second Declaration of Adrian James