UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 07-22670 CIV-SEITZ/O'SULLIVAN



STOCKWIRE RESEARCH GROUP, INC. and
ADRIAN JAMES,
                      Plaintiffs,
vs.

JONATHAN LEBED, LEBED BIZ, L.L.C.,
PIGASA, INC., and CONSTANCE LEBED,

                      Defendants.
_____/

## ORDER ON JULY 23, 2008 EVIDENTIARY HEARING GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT

THIS CAUSE is before the Court upon the July 23, 2008 Evidentiary Hearing on Plaintiffs' Motion for Final Default Judgment [DE-53]. Plaintiff filed a Motion for Final Default Judgment pursuant to Fed. R. Civ. P. 55(b), and on July 23, 2008, the Court held a related Evidentiary Hearing requiring Plaintiffs' to submit all relevant documentary evidence in support of the requested damages [See DE-77].[1] In addition, the Court entertained oral argument as to the proper method for calculating statutory damages under the Digital Millennium Copyright Act ("DMCA"), given the express holding in *McClatchey v. Associated Press*, 2007 WL 1630261, * at 6 (W.D. Pa. 2007) (DMCA damages limited to each "violative act," regardless of number of unlawful end-recipients). Therefore, in light of Plaintiffs' representations at the Evidentiary Hearing, and after close review of the record and applicable legal authority, the Court shall grant Plaintiffs' Motion for Final Default Judgment,[2] and hereby makes the following findings of fact and

---

[1] Plaintiffs filed the Amended Complaint on November 6, 2007 [DE-3]. On November 9, 2007, Plaintiffs effectuated service upon Defendant Pigasa, Inc., and on November 28, 2007, effectuated service upon Defendants Jonathan Lebed and Lebed Biz, LLC [DE-10, 13]. Plaintiff also served Defendant Constance Lebed, who is no longer a party to the action [DE-78]. On February 7, 2008, the Court held a Hearing to discuss Defendants' Motion to Strike and the pending Motion to Withdraw submitted by Jonathan Lebed's former counsel, Amaury Cruz, Esq. Shortly thereafter, the Court issued an Order On Hearing [DE-42], granting Mr. Cruz's Motion to Withdraw, effective March 10, 2008. Pursuant to such Order, the Court notified Jonathan Lebed of the ramifications of proceeding *pro se* [DE-41, 42]. In addition, the Court ordered Corporate Defendants Pigasa, Inc. and Lebed Biz, LLC to obtain substitute Counsel no later than March 10, 2008 or face potential default judgment pursuant to Fed. R. Civ. P. 55(a)-(b) [DE-42]. *See Palazzo v. Gulf Oil Corp.*, 764 F.2d 1381, 1385 (11th Cir. 1985). Thus, given Defendants' failure to comply with the March 10, 2008 Order, the Clerk of Court entered, pursuant to Fed. R. Civ. P. 55(a), a default as to Defendants Jonathan Lebed, Pigasa, Inc. and Lebed Biz, L.L.C. (together, "Defendants") [DE-87].

[2] Pursuant to Fed. R. Civ. P. 55(b), a district court may enter a default judgment against properly served parties who fail to defend or otherwise appear in the action. *DirectTv, Inc. v. Griffin*, 290 F. Supp.2d 1340, 1343 (M.D. Fla. 2003). In defaulting, defendants "admit the plaintiff's well-pleaded allegations of fact" for purposes of *liability*. *Buchanan v. Bowman*, 820 F.2d 359 (11th Cir. 1987). Thus, if the facts in the complaint are sufficient to establish liability, then the court must conduct an inquiry to ascertain the amount of damages. *Arista Records,*

1

conclusions of law:

I. **<u>FINDINGS OF FACT</u>**

(1) In 2006, Stockwire was paid by Amedia Networks, Inc. ("Amedia") approximately $657,500.00, to produce and distribute a multi-media documentary presentation that received U.S. Copyright Reg. No. PA 1 — 374 — 332 (the "Stockumentary").

(2) Plaintiff Stockwire owns the copyrights to the Stockumentary. Stockwire also owns the trademark STOCKUMENTARY (U.S. Reg. No. 3,436,612) that identifies Stockwire as the source of a series of interactive documentaries on publicly traded stocks, and as the source of advertising, business management, and consultancy services.

(3) Plaintiff Adrian James is the president of Stockwire, and appeared in the Stockumentary.

(4) Stockwire used password protection, user agreements, and Internet streaming technology (the "Stockwire TPM") to enforce the terms of its agreement with Amedia, and to limit and control the distribution of, and the exercise of its copyrights in, the Stockumentary. To view the Stockumentary through Stockwire's website, www.stockwire.com, Stockwire customers agreed to Stockwire's terms of service, and provided their name and personal information. Stockwire issued these customers password access to view the protected portions of its website, including the Stockumentary. Stockwire protected the Stockumentary by streaming technology that, in normal operation, prevented viewers from copying, distributing, and/or creating derivatives of the work.

(5) Defendant Jonathan Lebed is a resident of Florida, while Corporate Defendants Lebed Biz and Pigasa, Inc. are incorporated under the laws of New Jersey.

(6) In July 2007, non-party Zegal & Ross Capital, LLC ("Zegal") hired Defendants to promote Amedia Networks. Zegal paid Defendants $45,000.00 for the unauthorized use of the

---

*Inc. v. Beker Enter., Inc.*, 298 F. Supp. 2d 1310, 1312 (S.D. Fla. 2003). However, damages may be awarded only if the record adequately reflects the basis for the award via a hearing or a demonstration of detailed affidavits establishing the necessary facts. *See Adolph Coors Co. v. Movement Against Racism and The Klan*, 777 F.2d 1538, 1544 (11th Cir.1985). In other words, although a defaulted party admits well-plead allegations of liability, allegations relating to the amount of damages are not admitted by virtue of default. *See Smith v. Noso, Inc.*, 2007 WL 2254531 (M.D. Fla. 2007).

Stockumentary (the "Unauthorized Product").

(7) Defendants downloaded the Stockumentary from Plaintiff's website, www.stockwire.com.

(8) Without Plaintiff's permission, Defendants: (a) converted the Stockumentary to a Windows Media Video which could be distributed without technical protections; (b) removed all copyright notices from the Stockumentary; (c) removed all references to Stockwire from the Stockumentary; and (d) modified the audio track on the Stockumentary.

(9) Without Plaintiff's permission, Defendants intentionally removed the Stockwire Technical Protection Measures ("TPM"). Defendants designed the Unauthorized Product to bypass the Stockwire TPM and therefore enable third-parties to access, copy, redistribute, and create derivative works from the Stockumentary without Stockwire's consent or control.

(10) Without Plaintiff's permission, Defendants intentionally removed Stockwire's Copyright Management Information (the "Stockwire CMI"), and other source identifying information from the Stockumentary.[3]

(11) Without Plaintiff's permission, Defendants uploaded the Unauthorized Product to www.youtube.com and www.lebed.biz, in or around July 2007.

(12) Plaintiffs mailed Defendants cease and desist letters, alerting Defendants of their infringement of the Stockumentary. Google, Inc., the service provider for www.youtube.com, notified Defendants that the Unauthorized Product infringed Stockwire's copyrights. CI Host Inc., the service provider for www.lebed.biz, also notified Defendants of Stockwire's rights in the Stockumentary.

(13) Despite such warnings and notices, Defendants continued to distribute the Unauthorized Product via www.youtube.com and www.lebed.biz.

(14) On or around August 2, 2007, Google, Inc. removed the Unauthorized Work from www.youtube.com. Shortly therafter, Defendants again uploaded the Unauthorized Work to

---

3    Defendants removed the following Stockwire CMI: (1) the copyright notice; (2) the title of the work; (3) the information identifying Stockwire as the copyright holder of the work; and (4) the name of Adrian James who was credited in the work.

www.youtube.com. through a newly created user account. CI Host, Inc. removed the Unauthorized Product from www.lebed.biz. Defendants continued to distribute the Unauthorized Product via www.lebed.biz through a new service provider.

(15) The Unauthorized Product was viewed through Defendants' www.youtube.com account at least 11,786 separate times. At all material times, Defendants controlled the ability to stop distribution and copying of the Pirated Product from www.youtube.com. Defendants provided unauthorized copies of the Unauthorized Product through the website www.lebed.biz and a second account on www.youtube.com controlled by Defendants.

## II. CONCLUSIONS OF LAW

### A. LIABILITY AS TO COUNTS I-X OF THE AMENDED COMPLAINT

Pursuant to the Clerk of Court's Entry of Default [DE-87], and given the fact that Defendants have consequently admitted all well-plead allegations of fact contained in the Amended Complaint, *see Buchanan v. Bowman*, 820 F.2d 359 (11th Cir. 1987) (upon default, defendants "admit the plaintiff's well-pleaded allegations of fact" for purposes of liability), the Court finds that Plaintiffs have established Defendants' joint and several liability with regard to Counts I-X of the Amended Complaint.

### B. DAMAGES AND EQUITABLE RELIEF

The Court shall award statutory and actual damages, plus interest, on Counts II-IV. In addition, the Court shall grant the requested injunctive relief as to Counts I-V and Counts VIII-X.

#### 1. Count II: Removal of Copyright Management Information

The DMCA prohibits the intentional removal or alteration of copyright management information.[4]

---

[4] Thus, 17 U.S.C. § 1202(b)(1), provides that:

No person shall, without the authority of the copyright owner or the law... (1) intentionally remove or alter any copyright management information.

The term "copyright management information" means...

(1) The title and other information identifying the work, including the information set forth on a notice of copyright.

(2) The name of, and other identifying information about, the author of a work.

4

As an initial matter, given Defendants' liability, the Court finds that Plaintiff Stockwire is entitled to the requested equitable relief under Count II pursuant to 17 U.S.C. § 1203(b), and enjoins Defendants from further use of the Stockumentary.

With regard to damages, 17 U.S.C. § 1203(c)(3)(B) provides, in relevant part, that:

> A complaining party may elect to recover an award of statutory damages for *each violation* of section 1202 in a sum of not less than $2,500 or more than $25,000. (emphasis added).

Unfortunately, as noted at the Hearing, the DMCA does not define the scope or meaning of the phrase "each violation.[5]" Having said that, the Court is persuaded by *McClatchey v. Associated Press*, 2007 WL 1630261 (W.D. Pa. 2007). There, defendant Associated Press posted an unauthorized work on its website, thereby allowing unlawful access to 1,147 AP subscribers in violation of § 1202(a)-(b)(1).[6] In analyzing the phrase "each violation," the district court noted that:

> [T]he term "each violation" is best understood to mean "each violative act performed..." [thus, a defendant] would violate the DMCA each time it wrongfully distributed a [copyrighted work] to its subscribers. In this case the Court concludes that [defendant] committed only one alleged violative act by distributing [the unauthorized work] to its PhotoStream subscribers, even though there were 1,147 recipients.

*McClatchey v. Associated Press*, 2007 WL 1630261, at *6 (W.D. Pa. June 8, 2007).[7]

Here, as in *McClatchey*, Defendants posted an unauthorized work onto a website, thus allowing multiple viewers unlawful access. Following the *McClatchey* analysis, however, the number of unlawful recipients is immaterial for purposes of statutory damages under § 1203(c)(3)(B); rather, this Section focuses solely on the Defendants' conduct, or in other words, the number of times the Unauthorized Product was

---

(3) The name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright.... 17 U.S.C. § 1202(c).

[5] Thus, on one hand, § 1203(c)(3)(B) appears to permit statutory damages for *each* unlawful Stockumentary download, or 11,786 separate violations. On the other hand, however, § 1203(c)(3)(B) could be interpreted to permit statutory damages merely for each violative act Defendants committed, or in other words, each time Defendants unlawfully posted the Unauthorized Product for distribution onto the internet.

[6] In *McClatchey*, and as in the instant matter, it appears that the AP subscribers could view the unauthorized work at any time, from different locations. *McClatchey*, 2007 WL 1630261, at * 2, 6.

[7] The *McClatchey* court further reasoned that "Congress would not have intended to make the statutory damages windfall totally independent of the defendant's conduct. Where one act by Defendant results in mass infringement, it is more likely that actual damages will yield the more favorable recovery." *Id.* at 6.

5

posted on the internet for distribution, regardless of the number of end-recipients. *See id.* at 6. Accordingly, for purposes of §§ 1202 and 1203(c)(3)(B), Defendants posted the Unauthorized Product on to the internet on three separate occasions, and therefore committed three violative acts. *See id.* Consequently, under Count II of the Amended Complaint, the Court awards Stockwire the maximum statutory damages on the basis of three § 1202 violations, totaling $75,000.00.[8]

### 2. Count III: Circumvention of Technical Protection Measures

Pursuant to 17 U.S.C. § 1201(a)(1)(A), the DMCA also prescribes that no person shall circumvent a technological measure that effectively controls access to a work.[9] Initially, as with Count II, the Court finds that Plaintiff Stockwire is entitled to the requested injunctive relief under Count III pursuant to 17 U.S.C. § 1203(b). With regard to damages, 17 U.S.C. § 1203(c)(3)(A) provides, in relevant part, that:

> A complaining party may elect to recover an award of statutory damages for each violation of section 1201 in a sum of not less than $200 or more than $2,500 per act of circumvention...

Thus, the Court finds that each copy of the Unauthorized Product distributed by Defendants circumvented Stockwire TPM by violating Stockwire's control over access, availability, dynamic content, reproduction, and the terms and conditions of use in and of the Stockumentary. As such, the Court concludes that Defendants

---

[8] The DMCA's legislative history does not address the meaning of the phrase "each violation." While the DMCA's legislative history does utilize the phrase "legal *sanctions* for [unlawful] circumvention," such language would seem to refer to § 1203's imposition of treble damages with regard to "repeat offenders." S. REP. 105-190, at * 11 (emphasis added); 17 U.S.C. § 1203(c)(4). At any rate, the Court does not believe Congress, in enacting the DMCA legislation, authorized, nor intended, the requested windfall of between *$29,465,000.00 to $294,650,000.00* in statutory damages, on the basis of three internet uploads. Having said that, given the willful and continuing nature of Defendants' conduct, the Court shall award the maximum statutory award of $25,000 as to each violative act.

Finally, in support of their requested damages calculation, Plaintiffs cite to *Goldman v. Healthcare Management Systems, Inc.*, 2008 WL 1630261 (W.D. Mich 2008), in which the trial court distinguished *McClatchey* from its own factual scenario. *Goldman*, however, is not particularly useful for purposes of the instant § 1203(c)(3)(B) analysis, as Judge Maloney's opinion fails to set forth any meaningful factual background. Within this context, the Court finds reliance on *McClatchey* more appropriate, given the substantially similar fact-pattern presented there.

[9] That statute states, in relevant part:

No person shall circumvent a technological measure that effectively controls access to a work protected under this title.

As used in this subsection–

(A) to "circumvent a technological measure" means to descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner; and

(B) a technological measure "effectively controls access to a work" if the measure, in the ordinary course of its operation, requires the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to the work.

violated the Stockwire TPM on 11,786 recoverable occasions.[10] Therefore, pursuant to 17 U.S.C. § 1203(c)(3)(A), under Count III Stockwire shall be awarded $2,357,200.00 in statutory damages, consisting of 11,786 acts of circumvention multiplied by the minimum statutory damages award of $200 per act of circumvention.

### 3. Count IV: Federal Unfair Competition

With regard to Count IV, at the Evidentiary Hearing Plaintiffs elected to seek actual damages in the form of Stockwire's actual lost profits. Consequently, the Court concludes that Defendants received $45,000.00 in profits from third-party Zabel for the unauthorized use of the Stockumentary.[11] Furthermore, based on the factual findings set forth in Paragraphs Seven (7) through Fifteen (15) of this Order, the Court finds that Defendants' actions were willful, warranting treble damages pursuant to 15 U.S.C. § 1117(a). Therefore, under Count III of the Amended Complaint, Stockwire is entitled to $135,000.00, or in other words, the treble amount of Stockwire's $45,000 in actual lost profit.

### 4. Counts I and V-VII: Copyright Infringement, Tortious Interference with Business Relations, FDUTPA and Unfair Competition

As to Count I and Counts V-VII of the Amended Complaint, the Court awards no additional monetary damages. Under these Counts, Stockwire seeks disgorgement of the same $45,000 in actual lost profits recovered under Count IV. Therefore, the Court awards no additional monetary damages under these ancillary theories. However, the Court finds that Plaintiff Stockwire is entitled to injunctive relief under Count I and Count V.

---

[10] In contrast to recovery for CMI violations, 17 U.S.C. § 1203(c)(3)(A) clarifies the meaning of "each violation" with the phrase "per act of circumvention." As such, the Court finds that Plaintiffs may recovery for each instance in which an end-user gained access to the Stockumentary through unlawful circumvention. *See McClatchey*, 2007 WL 1630261, * at 5 (noting plaintiff's argument that "per act of circumvention" language supports liability for each unauthorized end-user).

[11] Significantly, there is no record evidence of costs or deductions as to the $45,000 payment; the product provided was the cited Unauthorized Product. Thus, in conformity with the discussions at the Hearing, the payment remitted from Zabel to Defendants constitutes $45,000 in actual profit.

In addition, while Stockwire put forth evidence of the fair market value for use of the Stockumentary, Plaintiffs failed to provide additional evidence with regard to profit and loss statements, expert reports, or appropriate detailed testimony. As such, the Court is unable to conclusively determine the full measure of actual damages, aside from the $45,000 payment from Zabel to Defendants.

5. **Counts VIII-X: Unauthorized Publication of James' Name and Likeness, Misappropriation, and False Light in the Public Eye**

Counts VIII through X relate to misappropriation of James' image. However, as discussed at the Hearing, in order to recover monetary damages for Defendants' misappropriation under Fla. Stat § 540.08, misappropriation under common law, or for the privacy violation of being placed in a false light, Plaintiffs must conclusively demonstrate the manner in which Plaintiff Adrian James was personally damaged. Here, James merely presented evidence of the $45,000.00 Zegal payment. While such payment is evidence of monetary damage to Stockwire, it fails to quantify damages Adrian James personally suffered. The Court finds, however, that Plaintiff James is entitled to injunctive relief under Counts VIII through X.

## III. CONCLUSION

Therefore, for the reasons stated above, it is hereby

ORDERED THAT Plaintiffs' Motion for Default Judgment is GRANTED. Final Default Judgment in favor of Plaintiffs Stockwire and Adrian James shall be ENTERED against Defendants, with a separate Final Judgment to be issued concurrently with this Order. All pending Motions are DENIED AS MOOT, and this case is CLOSED.

DONE and ORDERED in Miami, Florida this 17th day of September, 2008.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc:
Magistrate Judge O'Sullivan

Counsel of Record

Defendants Jonathan Lebed, Pigasa, Inc., and Lebed Biz, LLC
49 Ivy Place Wayne, New Jersey 07470